**EASTERN ASSOCIATED COAL CORP., Petitioner,**

**v.**

**INTERIOR BOARD OF MINE OPERA-TIONS APPEALS et al., Respondents.**

**No. 73–1859.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1973.

Decided Feb. 12, 1974.

R. Kenneth Wheeler, Richmond, Va. (Joseph C. Kearfott, Hunton, Williams,

Gay & Gibson, Richmond, Va., Thomas E. Boettger, Associate Counsel, Eastern Associated Coal Corp., Pittsburgh, Pa., on brief), for petitioner.

Judith S. Feigin, Atty., U. S. Dept. of Justice, and J. Philip Smith, Asst. Sol., Mine Health and Safety Div., U. S. Dept. of the Interior (Irving Jaffe, Acting Asst. Atty. Gen., Robert E. Kopp, Atty., U. S. Dept. of Justice, and Michael M. Hunter, Trial Atty., U. S. Dept. of the Interior, on brief), for respondents.

Before BRYAN, Senior Circuit Judge, and WINTER and CRAVEN, Circuit Judges.

PER CURIAM:

Eastern Associated Coal Corp. (Eastern) seeks review of an order of the Secretary of the Interior, acting by the Interior Board of Mine Operations Appeals, which, in turn, sustained an order of withdrawal to Eastern requiring Eastern to close a portion of one of its mines in Rachel, West Virginia, until certain allegedly unsafe conditions were corrected. The withdrawal order issued upon the determination by a federal mine safety inspector that the unsafe conditions constituted an "imminent danger" within the meaning of § 104(a) of the Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 814(a). The unsafe conditions were an accumulation of debris in a passageway, limiting vertical clearance, together with two loose roof bolts, which, in conjunction, could conceivably cause persons or vehicles passing through the passageway to be struck by the bolts.

■ In the proceedings before the Secretary, the dispute revolved about what is an "imminent danger." Eastern asserted that a danger is imminent only if there is a reasonable likelihood that it will result in injury before it can be abated, and that the admittedly danger-

ous conditions here did not constitute an "imminent danger" because Eastern had voluntarily withdrawn miners from the affected area until the conditions were corrected prior to issuance of the order. The Secretary determined, and we think correctly, that "an imminent danger exists when the condition or practice observed could reasonably be expected to cause death or serious physical harm to a miner if *normal mining operations were permitted to proceed in the area before the dangerous condition is eliminated.*" (Emphasis added). We therefore affirm the Board's order.

■ At argument, we questioned whether Eastern was a "person aggrieved" by the order sought to be reviewed within the meaning of § 106(a) of the Act, 30 U.S.C. § 816(a), since the withdrawal order was terminated within hours after its issuance. Our doubts on this score have been allayed. Even if we put aside the doctrine articulated in Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), that review is not always defeated when short term orders, capable of repetition, expire, § 109(a) of the Act, 30 U.S.C. § 819(a), authorized the imposition of civil penalties for violations of a mandatory health or safety standard, the amount of the penalty to be determined, *inter alia,* by "the gravity of the violation." The issuance of a withdrawal order is a factor bearing upon the gravity of a violation, and its validity or the correctness of the factual basis on which it rests may not be relitigated in a § 109 (a) proceeding. Spring Branch Coal Company, 2 IBMA 154 (1973); Buffalo Mining Company 2 IBMA 327, 333 (1973); Zeigler Coal Company, 2 IBMA 216, 223–24 (1973). Thus, Eastern has a present interest in the outcome of the instant case.

Affirmed.